IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| HANNAH COHEN, | ) |
| Plaintiff, | ) |
| v. | ) No. 16-cv-2529-SHL-cgc |
| MEMPHIS AND SHELBY COUNTY AIRPORT AUTHORITY, | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Memphis and Shelby County Airport Authority's ("MSCAA") Motion for Summary Judgment (ECF No. 70), filed June 26, 2017.[1] Plaintiff Hannah Cohen filed a Response (ECF No. 73) on July 24, 2017, and MSCAA filed its Reply on August 2, 2017 (ECF No. 75). This lawsuit arises from alleged injuries that occurred on June 30, 2015, when Plaintiff and her mother, Shirley Cohen ("Mrs. Cohen"), were passing through security at the Memphis International Airport (the "Airport"), while traveling home to Chattanooga, Tennessee, after Plaintiff received treatment at St. Jude Children's Research Hospital in Memphis, Tennessee.

Plaintiff filed her Complaint on June 28, 2016. (ECF No. 1.) MSCAA filed a Motion for Judgment on the Pleadings on August 10, 2016. (ECF No. 22.) On November 10, 2016, the Court entered an order granting in part MSCAA's Motion for Judgment on the Pleadings,[2] dismissing Plaintiff's tort claims, dismissing without prejudice Plaintiff's claims under the

---

[1] Defendant filed an Amended Motion for Summary Judgment (ECF No. 71) on the same day.
[2] The Court also dismissed Shirley Cohen's claims, dismissed all claims against the Transportation Safety Administration ("TSA") and dismissed Plaintiff's claims against the Airport Police because it is a sub-entity of the MSCAA not independently subject to suit.

Rehabilitation Act of 1973 ("Rehabilitation Act") and permitting only Plaintiff's claim under Title II of the Americans with Disabilities Act ("ADA") to move forward. In that Order, the Court also found that the Rehabilitation Act claim could not proceed because Plaintiff failed to allege that the MSCAA receives federal funding, an element of that claim. The Court found that the defect in that claim was merely a technicality, and, accordingly, dismissed the claim without prejudice, with leave for Plaintiff to amend her Complaint. (ECF No. 50 at 9.) Specifically, the Court noted that "the Court will **DISMISS WITHOUT PREJUDICE** Hannah Cohen's claims under the Rehabilitation Act, with leave to amend the Complaint to allege that MSCAA receives federal funding." (Id.)[3]

Despite the clear instruction from the Court, Plaintiff did not amend her Complaint to add a claim that MSCAA receives federal funding, and, thus, Plaintiff's claim under the Rehabilitation Act is not presently before this Court. Nonetheless, both Parties addressed Plaintiff's Rehabilitation Act claim,[4] which is evaluated under the same standards as her ADA claim. See Turner v. City of Englewood, 195 F. App'x 346, 353 (6th Cir. 2006). Thus, the Court's analysis would apply equally to a claim by Plaintiff under the Rehabilitation Act, even if Plaintiff had amended her Complaint.

In the present Motion, Defendant argues that the undisputed material facts fail to support a claim by Plaintiff that Defendant violated her rights under Title II of the ADA. For the reasons stated herein, the Court agrees and **GRANTS** Defendant's Motion for Summary Judgment.

---

[3] The Court first stated that Plaintiff failed to assert a necessary element of the Rehabilitation Act in its introduction. (Id. at 2.) The Court again stated that it was giving leave for Plaintiff to file an Amended Complaint in its conclusion. (Id. at 10.) Therefore, it is unclear to the Court why Plaintiff did not amend her Complaint but nonetheless appears now to believe that her claim under the Rehabilitation Act remains pending.

[4] MSCAA does raise Plaintiff's failure to amend her Complaint as an issue in its Reply brief. (ECF No. 75 at 6 n.1.)

**STATEMENT OF THE FACTS**[5]

I.     Memphis Airport Security

Pursuant to federal law, the Transportation Security Administration ("TSA") conducts screening procedures at the Airport, including making the determination regarding who passes the screening, who may enter the Airport's "sterile" area[6] and who may board a flight departing from the Airport. (Def.'s SUMF ¶¶ 66-76.) If the TSA requires that a passenger undergo additional screening to pass through the checkpoint and a passenger refuses, the TSA may request that the Memphis International Airport Police Department ("Airport Police") (employees of MSCAA) dispatch officers to the checkpoint. (Id. at ¶ 74.) An officer then typically gives noncompliant passengers two options: they must undergo additional screening as requested by TSA or leave the checkpoint and return to the unsecure part of the Airport. (Id. at ¶ 75.)

II.    Incident

Plaintiff is a disabled person who is deaf in one ear, blind in one eye and has cognitive issues resulting from the removal of a cancerous brain tumor early in life. (ECF No. 75 at 4.)[7]

---

[5] The following facts are taken from Defendant's Statement of Undisputed Material Facts ("SUMF"), the attached exhibits and Plaintiff's response thereto, including the exhibit video submitted to Chambers by Defendant. Where disputes of fact remain, they are noted. Plaintiff submitted a separate, numbered response to Defendant's SUMF (although without listing the responses below Defendant's submitted facts), and also included a "Facts" section to her "Memo of Law of the Plaintiff Hannah Cohen, Opposing the Motion for Summary Judgment" that contained additional facts with citations to the record. However, Plaintiff did not create a separate document and did not list these facts in separate, numbered paragraphs as required by the Court's Local Rules. See L.R. 56.1. Moreover, because all Plaintiff's filings are (impermissibly) single-spaced, it appears she likely exceeded the 5-page limitation on a non-movant's statement of additional facts. Out of an abundance of caution, Defendant nonetheless responded to the facts to which it objected, and the Court will consider the disputes herein. Plaintiff's counsel is instructed to consult the Local Rules prior to submitting future filings with this Court.
[6] The "sterile area" appears to be defined as anything past the TSA checkpoint.
[7] The record also indicates that Plaintiff suffers from depression and was on prescribed medication at the time of the incident. (See ECF No. 73-1 at 2.)

She graduated from high school, is independent, and is able to "hear, communicate, and obey instructions." (Pl.'s Resp. to Def.'s SUMF ¶¶ 34-35, ECF No. 73-2.) According to her, she does not have a physical or mental impairment that inhibits her ability to follow instructions. (Pl.'s Resp. to Def.'s SUMF ¶ 54, ECF No. 73-2; Def.'s SUMF ¶ 54, ECF No. 71-2.)

On June 30, 2015, Plaintiff and her mother were traveling home to Chattanooga, Tennessee, after Plaintiff received follow-up treatment at St. Jude Children's Research Hospital. (Dep. of Hannah Cohen 59:11-62:1, ECF No. 71-4.) Plaintiff testified at her deposition that, between her long-term treatment at St. Jude and family vacations, she had flown and experienced airport security numerous times. (Id. at 51:8-18.) The subject incident occurred as Plaintiff and her mother were passing through airport security, and was recorded by cameras in MSCAA's video surveillance system. (Def.'s SUMF ¶¶ 1-12, ECF No. 71-2.) The video depicts Plaintiff and her mother moving through a full-body scanner in the standard lane. (Video 3:03:21; Def.'s SUMF ¶ 13, ECF No. 71-2.) Agent Debora Black was working on the Advanced Imaging Technology ("AIT") screening machine in that lane at the TSA checkpoint. (Aff. of Debora Black ("Black Aff.") ¶ 3, ECF No. 71-7.) When Plaintiff was screened by the AIT, Black determined that the machine indicated that Plaintiff required additional screening on her chest and wrists. (Id. at ¶ 4.) The video reflects Black instructing Plaintiff to wait. (Video 3:03:54-3:04:08.)

At this point, Plaintiff concedes that she disagreed with the TSA agent as to whether she needed additional screening but there is a dispute of fact between Plaintiff's deposition and Ms. Black's affidavit as to how Plaintiff refused to comply with the additional screening. (See Black

4

Aff. ¶¶ 6-8, ECF No. 71-7; Dep. of Hannah Cohen 66:15-67:24, ECF No. 71-4.)[8] Plaintiff appears to have believed that the scanner had only picked up her sequined shirt and that she should have been able to just remove it. (Dep. of Hannah Cohen 66:21-67:8, ECF No. 71-4.) This description comports with video footage that shows her lifting up her shirt and indicating that she had an undershirt on. (Video 3:04:22.) Thereafter, the video depicts Plaintiff moving past two TSA agents, including Ms. Black, who are attempting to prevent her from walking toward the conveyor belt to collect her belongings, without apparent physical force. (Video 3:04:31-3:04:40.) Ms. Black then states that she called her supervisor. (Black Aff. ¶ 9, ECF No. 71-17.)

The video next depicts Plaintiff from a different angle, sitting on a bench in the screening area. (Video 3:05:29.) Up until this point, the only visible security agents were TSA agents.[9] Airport Police Officers Havard Johnson ("Officer Johnson") and Daniel Oster ("Officer Oster") arrived after being dispatched because Plaintiff triggered a screening machine and refused to go through additional screening. (Video 3:07:21; Johnson Aff. ¶ 3, ECF No. 71-8.) The Officers told Plaintiff that she needed to either go through additional screening or leave the secure area, which Plaintiff admits she understood. (Def.'s SUMF ¶¶ 97, 99, ECF No. 71-2.) Officer Johnson indicates that Plaintiff refused to go through additional screening, which Plaintiff attempts to dispute by citing to Plaintiff's deposition testimony stating, "I was not going to run

---

[8] Plaintiff also contends that Ms. Black had grabbed her (Dep. of Hannah Cohen 69:19-20, ECF No. 71-4), although the video does not clearly depict that. This dispute is not material as TSA, Black's employer, is no longer a party to this action.
[9] It is unclear to the Court whether Mrs. Cohen or Plaintiff ever expressed to any TSA agents that Plaintiff has a disability prior to (or even after) her noncompliance.

5

away. I was trying to get him to let go of me so we could talk it out and so I could cooperate."
(Johnson Aff. ¶ 8, ECF No. 71-8; Dep. of Hannah Cohen 87:2-4, ECF No. 71-4.)[10]

According to Officer Johnson, he was required to escort Plaintiff out of the secure area because a MSCAA police officer cannot countermand TSA's decision regarding screening and Plaintiff was not compliant. (Johnson Aff. ¶ 9, ECF No. 71-8.)[11] He states that when he tried to escort Plaintiff, she pushed him. (Id. at ¶ 11.) In an attempt to deescalate the situation, he then grabbed her fists and began to step backwards. (Id. at ¶ 12.) When he let go of her fists, he contends that Plaintiff swung her arm and hit him, after which he had no choice but to place her under arrest. (Id. at ¶¶ 13-15.) To dispute Officer Johnson's account of the incident, Plaintiff cites to her deposition testimony, including the following exchange:

> Q. Okay. Who made contact first, the officer or you?
> A. The officer. I remember he grabbed me like this, and then I was trying to get away.
> Q. Okay.
> A. And then he tackled me.
> Q. At any point, did he pull a weapon on you?
> A. No.
> Q. Before he arrested you, did he ever threaten you in any way?
> A. He told me if I didn't cooperate he would arrest me, and I was trying to cooperate.
> Q. Okay. At any point did you punch the police officer?
> A. No.
> Q. Okay. So what if the video showed you punching the police officer, would it be accurate, or what [sic] you're telling me today be accurate?
> A. I did not punch him.
> Q. Did you push him?

---

[10] The Court finds that this statement alone does not create a genuine dispute of fact as to whether Plaintiff indicated that she would cooperate with Officer Johnson at this point. What Plaintiff's mental state was at the time of the incident does not create a genuine dispute as to whether she had verbally consented to an Airport Police Officer to further screening. There is no testimony in Plaintiff's deposition that she told an Airport Police Officer that she was willing to go through further screening.

[11] The Court also notes that there are several minutes on the video between Plaintiff's noncompliance with Ms. Jones's instructions and Plaintiff's arrest, during which TSA and/or Airport Police, including Officer Johnson, appear to be speaking to Plaintiff and her mother.

6

> A. I – I did. I – I believe I did, but it was because he grabbed me, and I was trying to get away. And in the video that I saw, all it showed was me pushing him. It did not show him grabbing me.

(Dep. of Hannah Cohen 85:15-86:14.)[12] Although it is not clear from the video whether Officer Johnson first placed a hand on Plaintiff (which he does not necessarily dispute), the video does show that Plaintiff pushed him off of her multiple times and that he was holding onto her fists (3:09:36) as she continued to resist him before he took her down to the ground to arrest her (3:09:38-45). The video further depicts her kicking and resisting as Officer Johnson and then Officer Oster arrested her. (3:09:45-3:10:45.) It is undisputed that Officer Johnson had no knowledge of Plaintiff's medical condition(s) until after her arrest. (Pl.'s Resp. to Def.'s SUMF ¶ 109, ECF No. 73-2.)

Based on the above-described events, Plaintiff filed a Complaint against the TSA, the MSCAA and the Airport Police alleging violations of the ADA, the Rehabilitation Act and tort claims under Tennessee law, from alleged injuries suffered during her arrest. As previously discussed, the Court has dismissed all claims by Plaintiff except her ADA claim against MSCAA. (See ECF No. 50.) Defendant contends that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law because the facts do not support an inference that MSCAA intentionally discriminated against Plaintiff because of her disability. Plaintiff contends that there is a genuine dispute of fact from which the Court can infer intentional discrimination based on MSCAA's failure to train its officers to comply with the ADA. (ECF No. 73-1 at 6-7.)

---

[12] Plaintiff actually only cites to a smaller portion of this testimony, however, the Court includes the larger portion for context.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court is to view facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once a properly supported motion for summary judgment has been made, the party opposing summary judgment must show that there is a genuine dispute of material fact by pointing to evidence in the record or must argue that the moving party is not entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1). The opposing party "cannot rest solely on the allegations made in [his] pleadings." Everson v. Leis, 556 F.3d 484, 496 (6th Cir. 2009) (quoting Skousen v. Brighton High Sch., 305 F.3d 520, 527 (6th Cir. 2002)) (alteration in original). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

While the court views all evidence and factual inferences in the light most favorable to the non-moving party, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original). The court's role is not to weigh evidence or assess credibility of witnesses, but simply to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Kroll v. White Lake Ambulance Auth., 763 F.3d 619, 623 (6th Cir. 2014) (quoting Anderson, 477 U.S. at 251–52).

## ANALYSIS

Defendant argues that Plaintiff fails to establish a dispute of material fact regarding intentional discrimination, a fatal flaw in her prima facie case in support of an ADA claim. Specifically, Defendant states that Plaintiff does not establish that her arrest was wrongfully based on intentional discrimination and that, as a matter of law, there is no "inadequate training" claim available under the ADA. Even if there were, according to Defendant, Plaintiff lacks the expert testimony required to support a failure to train claim. (ECF No. 71-1 at 21-22.) Plaintiff responds that the deposition testimony of Plaintiff and Shirley Cohen establish a genuine dispute of material fact as to whether the MSCAA intentionally discriminated against her.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "[The Court] analyze[s] claims of intentional discrimination brought pursuant to the ADA . . . under the familiar burden-shifting analysis established by [McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)]." Turner, 195 F. App'x at 353. "Under McDonnell Douglas, [p]laintiff must first establish a prima facie case for discrimination." Id. To establish a prima facie case under the ADA, a plaintiff must show "that [s]he (1) is disabled under the statutes, (2) is "otherwise qualified" for participation in the program, and (3) 'is being excluded from participation in, denied the benefits of, or subjected to discrimination' because of [her] disability or handicap . . . ." Gohl v. Livonia Pub. Sch., No. 15-2301, 2016 WL 4698279, at *6 (6th Cir. Sept. 8, 2016) (quoting G.C. v. Owensboro Pub. Sch., 711 F.3d 623, 635 (6th Cir. 2013)). "[T]he plaintiff must show that the defendant took the action because of the plaintiff's disability, i.e., the '[p]laintiff must present evidence that animus against

9

the protected group was a significant factor in the position taken by the . . . decision-makers themselves or by those to whom the decision-makers were knowingly responsive.'" Anderson v. City of Blue Ash, 798 F.3d 338, 357 (6th Cir. 2015) (quoting Turner v. City of Englewood, 195 F. Appx' 346, 353 (6th Cir. 2006)). "Further, the plaintiff must show that the discrimination was *intentionally* directed toward him or her in particular." Id. (quoting Tucker v. Tennessee, 539 F.3d 526, 532 (6th Cir. 2015)) (emphasis in original).

Although the Sixth Circuit has not developed a framework for whether police conduct during an arrest or investigation can lead to liability under the ADA, see Everson v. Leis, 412 F. App'x 771, 774-75 (6th Cir. 2011), other circuits address the applicability of Title II to arrests under two theories: a "wrongful arrest" theory and a "reasonable accommodations" theory. Scozzari v. City of Clare, 723 F. Supp. 2d 945, 970 (E.D. Mich. 2010). As explained herein, however, the Court need not address whether Title II applies to arrests because, even if it did, Plaintiff fails to establish a genuine issue of material fact as to whether MSCAA discriminated against her because of her disability. See Everson, 412 F. App'x at 775 (citing Tucker, 539 F.3d at 534-35; Shultz v. Carlisle Police Dep't, 706 F. Supp. 2d 613, 626 (M.D. Pa. 2010)).[13]

Because it is undisputed that Plaintiff is a qualified individual with a disability under Title II of the ADA, the Court need only determine whether discrimination based on her disability was a significant factor in Defendant's use of force and arrest. However, Plaintiff fails to establish a genuine dispute of material fact that it was. In fact, Plaintiff does not at all show how discrimination factored into the actions taken by Airport Police officers. First, even taken in the light most favorable to Plaintiff, the undisputed material facts indicate that Officer Johnson

---

[13] The intent element of Title II is dispositive regardless of whether Title II extends to arrests. See Shultz, 706 F. Supp. at 626 ("Because the court finds that the question of whether plaintiff was discriminated against because of his disability is dispositive, the court declines to address which standard for evaluating claims like plaintiff's is appropriate.")

was unaware of Plaintiff's disability at the time she was arrested. Moreover, Plaintiff concedes that she understood the situation and was able to follow directions, yet she ignored a TSA agent's request that she go through additional screening, and further declined to do so when the Airport Police arrived.

Officer Johnson's conduct was a response to the potential safety threat posed by an individual (Plaintiff was nineteen at the time) who was both refusing to comply with additional screening and declining to return to the non-sterile area. It was only after Plaintiff refused to be escorted out and physically resisted Officer Johnson that she was arrested. There is simply no evidence to support a conclusion that any action by Officer Johnson or the Airport Police that day was taken because of Plaintiff's disability. Significantly, the Court lacks proof that Officer Johnson or any MSCAA agent had knowledge of Plaintiff's disability or any other reason to believe Plaintiff did not understand the situation. Even in situations where a disability is known, public safety concerns often dictate certain courses of action. See Tucker v. Tennessee, 539 F.3d at 336 ("Where . . . officers are presented with exigent or unexpected circumstances, it would be unreasonable to require accommodations be made in light of the overriding public safety concerns . . . we rely on and expect law enforcement officers to respond fluidly to changing situations and individuals they encounter."); Emerson v. Leis, 412 F. App'x at 775-778 (finding that a plaintiff failed to establish a genuine dispute of material fact as to whether an officer discriminated against him due to his disability in an arrest where the officer's reaction was justified by plaintiff's conduct).

There is no evidence here to support an inference of discriminatory intent by the officers. Even when viewing the evidence in the light most favorable to Plaintiff, the evidence shows that it was Plaintiff's noncompliance with the security protocol that motivated the Airport Police's

11

actions. Therefore, there is no room for a jury to find that Officer Johnson intentionally discriminated against Plaintiff, in violation of the ADA.

Finally, to the extent Plaintiff attempts to support her intentional discrimination claim by disputing whether the Airport Police were properly trained, the Sixth Circuit has noted that "the failure to train officers on how to comply with the ADA is not intentional discrimination." Everson, 412 F. App'x at 780 n.3 (6th Cir. 2011) (citing Dillery v. City of Sandusky, 398 F.3d 562, 568 (6th Cir. 2005) ("Acts and omissions which have a disparate impact on disabled persons in general are not specific acts of intentional discrimination against the plaintiff in particular."). Because the evidence does not support an inference that MSCAA's arrest of Plaintiff was because of her disability, Plaintiff fails to establish a prima facie discrimination claim under Title II of the ADA. Thus, summary judgment in favor of Defendant is appropriate.

## CONCLUSION

Plaintiff fails to establish a dispute of material fact as to whether MSCAA discriminated against Plaintiff. Defendant is therefore entitled to judgment as a matter of law as to Plaintiff's ADA claim, and the Court **GRANTS** Defendant's Motion for Summary Judgment. All claims by Plaintiff against Defendant are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 25th day of August, 2017.

s/ Sheryl H. Lipman<br>
SHERYL H. LIPMAN<br>
UNITED STATES DISTRICT JUDGE